# CIRCUIT COURT OF ALBEMARLE COUNTY

William Budd

v.

Punyanitya et al.

October 14, 2005

Case No. (Law) CL04-9688

BY JUDGE PAUL M. PEATROSS, JR.

This matter comes before the Court on the Motion to Dismiss of Defendant, Martha Jefferson Hospital on the basis that the action is barred as to Martha Jefferson Hospital. Specifically, Defendant asserts that Plaintiff elected his remedy under the Virginia Workers' Compensation Act and is limited to benefits under the Act. Therefore, Plaintiff does not have a separate cause of action against Martha Jefferson Hospital for alleged negligence. The Motion was argued on September 1, 2005, and the Court took the matter under advisement to consult additional legal authorities.

The Court grants Defendant Martha Jefferson Hospital's Motion to Dismiss and dismisses Martha Jefferson Hospital from this action with prejudice. The Virginia Workers' Compensation Act considers Mr. Budd's injuries to be compensable under the Act, which provides his sole remedy against his employer for such injuries.

## I. Question Presented

Whether a hospital employee's workers' compensation claim bars a subsequent action against the hospital for negligent treatment of the compensable injury.

## II. Factual Background

William Budd was an employee of Martha Jefferson Hospital from May 2000 to approximately February 2001. He suffered a compensable injury by accident on June 15, 2000. While working as an Emergency Department Technician acting within the scope of his employment, Mr. Budd was assisting a patient to exit her vehicle when the vehicle slid into reverse, pinning Mr. Budd against the patient's wheelchair.

Mr. Budd and Martha Jefferson Hospital stipulated that Mr. Budd sustained an injury compensable under the Workers' Compensation Act by an accident arising out of and in the course of his employment. Mr. Budd and Martha Jefferson Hospital also stipulated that, as a result of the accident, Mr. Budd suffered a back injury, for which he received temporary total disability benefits. Pursuant to Mr. Budd's workers' compensation award, Martha Jefferson Hospital also paid for the medical treatment related to his back injury.

Mr. Budd continued to have symptoms related to his back injury, and in February 2002 he was diagnosed with spinal stenosis at L4-5 and a recurrent disc herniation at L5-S1. On February 26, 2002, Mr. Budd underwent an operation at Martha Jefferson Hospital described as a decompression laminectomy, lysis of scar tissue, and an exploration and excision of calcified recurrent disc herniation. Mr. Budd was presented with the option to undergo the procedure at another hospital, but chose to have it done at Martha Jefferson Hospital. The procedure was paid for by Martha Jefferson Hospital and its insurer, as part of the workers' compensation claim.

Mr. Budd alleges that, in the course of that surgery, Dr. Punyanitya and hospital nurses negligently failed to make a timely diagnosis of compartmental syndrome, which ultimately required another surgical procedure, a fasciotomy. In the current medical malpractice action, Mr. Budd alleges "that since the delayed diagnosis of severe compartment syndrome and subsequent fasciotomy, he has suffered chronic cellulitis in the left lower extremity and now has permanent nerve damage resulting in 'foot drop,' can only walk with a cane, and has had to go on permanent disability from his job as a paramedic." Mr. Budd alleges that the nursing care provided by Martha Jefferson Hospital failed to comply with the standard of care. Mr. Budd asserts that Dr. Punyanitya committed malpractice in the course of the February 26 surgery. Mr. Budd also asserts that Martha Jefferson Hospital is liable for damages including pain and suffering, mental anguish, permanent disability, humiliation, embarrassment, inconvenience, lost wages, and medical expenses.

## III. Workers' Compensation
## and the Dual Capacity Doctrine

The ruling on the Motion to Dismiss turns on whether the dual capacity doctrine applies in Virginia. Under the doctrine, an employee eligible to receive workers' compensation benefits may also sue an employer in tort when injury results from a breach of a duty owed by the employer to the employee separate from the duty arising out of the employer-employee relationship. Michael A. DiSabatino, *Modern Status: "Dual Capacity Doctrine" as Basis for Employee's Recovery from Employer in Tort*, 23 A.L.R.4th 1151 (1983).

The Workers' Compensation Act does not explicitly address the dual capacity doctrine. Va. Code § 65.2-307 states that the rights and remedies provided to the employee by the Act shall exclude all of the employee's other rights and remedies as against his employer. Va. Code § 65.2-605 does discuss malpractice in the context of the Act, but does not explicitly address the situation presented here. It reads:

> The pecuniary liability of the employer for medical, surgical, and hospital service herein required when ordered by the Commission shall be limited to such charges as prevail in the same community for similar treatment when such treatment is paid for by the injured person and the employer shall not be liable in damages for malpractice by a physician or surgeon furnished by him pursuant to the provisions of § 65.2-603, but the consequences of any such malpractice shall be deemed part of the injury resulting from the accident and shall be compensated for as such.

The section merely requires the employer to continue to make workers' compensation payments to the injured employee for further treatment necessitated by any malpractice by a physician or surgeon.

The Supreme Court of Virginia has not yet addressed the question presented by this case. Mr. Budd relies on *Fauver v. Bell*, 192 Va. 518, 65 S.E.2d 575 (1951), which held that a physician may be sued for malpractice in the treatment of an injury compensable under the Act. Mr. Budd cites *Fauver* as support for the proposition that "a malpractice action is a separate cause of action from an on the job injury." (Supp. Mem. in Opposition to Motion to Dismiss at 4). It does not necessarily follow, however, that the hospital itself is liable for malpractice. First, because it is also the employer, it is not a "third party" under the Act, and *Fauver* holds only that malpractice actions may lie

against third party wrongdoers. Second, the final clause of § 65.2-605 indicates that, as far as the employer's obligation is concerned, treatment necessitated by malpractice is part of the injury resulting from the [original] accident. This clause suggests that malpractice can give rise to a separate cause of action as against a physician or surgeon, but not a separate cause of action as against the employer. Third, the purpose of the Act is to balance the needs of employers and employees by guaranteeing a certain recovery that may fall short of full tort damages. See *Low Splint Coal Co. v. Bolling*, 224 Va. 400, 406, 297 S.E.2d 665, 668 (1982). The text of the Act indicates that the dual capacity doctrine does not apply here, and the Supreme Court has not indicated otherwise.

On the rare occasions where courts applying Virginia law have discussed the dual capacity doctrine, the results have been uniform. The Western District of Virginia, in *Kast v. Pittsburgh Plate Glass Co.*, 644 F. Supp. 237, 240-41 (W.D. Va. 1987), found in a products liability suit that there is no dual capacity doctrine in Virginia. "The court . . . is unwilling to fill in the blanks in the state's workers' compensation scheme by relying on implications and hidden meanings contained in the few cases and statutes cited by the plaintiff. . . . The court's approval of the dual capacity doctrine would reshape the purpose of the state's workers' compensation scheme." *Id.* at 240. The Circuit Court of Fairfax County, in *Brown v. Alger*, 31 Va. Cir. 531 (1992), also found that the dual capacity doctrine did not apply where the injured employee sues his employer in tort for failure to maintain safe premises. "Although our courts have not specifically adopted or rejected the dual capacity doctrine, existing law does suggest that Virginia courts would not adopt a doctrine that would undermine the clear policy of the Act." In sum, other courts applying Virginia law have found in other contexts that the dual capacity doctrine runs counter to the purposes of the Act and have declined to embrace it.

Jurisdictions outside Virginia do not uniformly subscribe to the dual capacity doctrine where the employer is also the medical service provider. The highest courts in some states have adopted the doctrine in this context. See, e.g., *Sturtevant v. County of Monterey*, 228 Cal. App. 3d 758 (Cal. Ct. App. 6th Div. 1991) (discussing *Duprey v. Shane*, 249 P.2d 8 (Cal. 1952), and subsequent authority); *Wright v. State*, 639 So. 2d 258 (La. 1994); *Guy v. Arthur H. Thomas Co.*, 378 N.E.2d 488 (Ohio 1978). The highest courts in a other states, however, have not adopted the doctrine in this context. See, e.g., *McCormick v. Caterpillar Tractor Co.*, 423 N.E.2d 876 (Ill. 1981); *Suburban Hosp. v. Kirson*, 763 A.2d 185 (Md. 2000); *McAlister v. Methodist Hosp. of Memphis*, 550 S.W.2d 240 (Tenn. 1977). See generally 23 A.L.R.4th 1151, *supra*.

*IV. Conclusion*

There is no clear support in the text of the Workers' Compensation Act for finding that the dual capacity doctrine applies in Virginia. There is no binding judicial authority suggesting that such a doctrine exists here. Other jurisdictions are split on the question. The absence of substantial authority favoring adoption of the doctrine and the doctrine's seeming incompatibility with the purpose of the Act to balance the protections afforded to employees and employers require that this court hold that Mr. Budd's exclusive remedy against his employer lies through the Workers' Compensation system.