# CIRCUIT COURT OF THE CITY OF NORFOLK

Daniel R. Mathes

v.

Kaye Davis
and Liberty Mutual
Insurance Company

December 3, 2007

Case No. 07-0482

BY JUDGE CHARLES E. POSTON

The Defendants, Kaye Davis and Liberty Mutual Insurance Company, have filed a Demurrer and Plea in Bar to the Complaint filed by the Plaintiff, Daniel R. Mathes, and request that the Court dismiss the Plaintiff's Complaint. Having considered the parties' submissions and argument of counsel, the Court grants the Defendants' Plea in Bar. Because of the Court's ruling on the Plea in Bar, there is no need to address the Demurrer.

## I. *Factual and Procedural History*

For familiar reasons, the Court views the facts in the light most favorable to the Plaintiff. In 2002, Liberty Mutual Insurance Company was the workers' compensation insurance carrier for Plasser American Corporation. On or about September 29, 2002, Plaintiff was injured while acting within the

scope of his duties as an employee at Plasser and filed a claim with Liberty in accordance with the Virginia Workers' Compensation Act, Title 65.2 of the Code of Virginia. Plaintiff began treatment with Dr. Robert M. Spear on or about November 7, 2002. This treatment included surgery on his neck (anterior cervical fusion) in March of 2003 and surgery on his right shoulder (full thickness rotator cuff tear) in June of 2004. Additionally, Plaintiff underwent a rigorous Functional Capacity Evaluation (FCE) to determine whether and in what capacity he could return to work after undergoing medical treatment for his injuries.

While Plaintiff's workers' compensation claim was pending with Liberty, Liberty designated Kaye Davis to be Plaintiff's case manager. As case manager, Ms. Davis' duties included acting as a liaison between Plaintiff, Plasser, and his physicians regarding Plaintiff's progress, return-to-work status, and treatment recommendations; scheduling and attending all of Plaintiff's physician's appointments; and identifying treatment plans, overseeing medical care, and monitoring Plaintiff's progress.

Plaintiff alleges that in 2005, Ms. Davis intentionally and fraudulently misrepresented to Dr. Spear's partner, Dr. Lisa Barr, that Dr. Spear had wanted Plaintiff to appear for a second FCE but had forgotten to sign the necessary order for the evaluation before he left for a vacation. Relying on this misrepresentation, Dr. Barr signed the order for the second FCE. On April 4, 2005, Plaintiff began the second FCE, which allegedly exacerbated his existing injury causing "additional pain and complications." Complaint, ¶ 22. Specifically, Plaintiff alleges that the second FCE caused "*exacerbation and further injury* . . . requiring him to seek additional medical care." *Id.*, ¶ 20 (emphasis added). As a result, Liberty provided Plaintiff further surgery on his neck (re-exploration of his neck wound, removal of previous fusion, and another fusion) in November of 2005. Stipulations Relating to Plea in Bar, ¶ 11.

The Workers' Compensation Commission approved a settlement agreement between Plaintiff, Plasser, and Liberty on January 19, 2007. Plaintiff was represented by counsel at all stages of the settlement negotiations. As part of the settlement, Plaintiff received a lump-sum payment of $75,000 and Liberty was "to be released and discharged from any and all further liability for benefits of any nature. . . ." Order Approving Settlement at 1-2. The Commission further ordered that Plasser and Liberty were "released and discharged from any and all liability for benefits of any nature . . . as a result of the alleged accident of September 29, 2002, and any injuries resulting therefrom, including any compensable consequence, change-in-condition, aggravation, or exacerbation." *Id.* at 4.

Plaintiff pleads a cause of action in tort for negligence contending that Liberty had a duty to manage his case in a manner that would not cause him personal injury or harm and, further, to be truthful to Plaintiff's health care providers. Essentially, Plaintiff alleges that Liberty breached the common law duty of good faith and fair dealing in managing his case. Asserting that Liberty was negligent in the management of his case and that this negligence was a direct and proximate cause of additional pain and complications to him, Plaintiff seeks $350,000 in compensatory damages plus $350,000 in punitive damages.

Defendants aver that they did not owe Plaintiff any extra-contractual common law duty, the breach of which would give rise to an action in tort. Additionally, given the nature of Plaintiff's injuries and the language of the settlement ordered by the Commission, Liberty asserts that Plaintiff's exclusive remedy is under the Workers' Compensation Act and that Plaintiff is subsequently barred from bringing any cause of action against it. Consequently, Liberty has filed a Plea in Bar and a Demurrer to the Complaint.

## II. *Discussion*

### A. *Standard of Review*

The standards of review for a defensive plea in bar and a demurrer are substantially similar. "The defensive plea in bar shortens the litigation by reducing it to a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery. The moving party carries the burden of proof on that issue of fact." *Tomlin v. McKenzie*, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996); *see also Campbell v. Johnson*, 203 Va. 43, 47, 122 S.E.2d 907, 909 (1961). "Where no evidence is taken in support of the plea, the trial court, and the appellate court upon review, must rely solely upon the pleadings in resolving the issue presented." *Tomlin*, 251 Va. at 480; *see also Weichert Co. of Va. v. First Commercial Bank*, 246 Va. 108, 109, 431 S.E.2d 308, 309 (1993). When considering the pleadings, "the facts stated in the plaintiffs' motion for judgment [are] deemed true." *Glascock v. Laserna*, 247 Va. 108, 109, 439 S.E.2d 380, 380 (1994).

### B. *Plaintiff's Injury Falls Within the Scope of the Workers' Compensation Act*

Defendants assert that Plaintiff has no common law rights against his employer relating to injuries arising out of the course of his employment. Indeed, "[w]hen an employee is injured in a work-related accident, the

Virginia Workers' Compensation Act provides the sole and exclusive remedy against the employer." *Rasnick v. The Pittston Co.*, 237 Va. 658, 660, 379 S.E.2d 353, 354 (1989). This exclusivity of remedies applies equally to an employer's insurer as it does to the employer. *See* Va. Code Ann. § 65.2-300 (includes insurers within the definition of "employer"); *see also Williams v. United States Fid. & Guar. Co.*, 358 F.2d 799 (4th Cir. 1966) (holding that an insurer is not merely made the guarantor of the employer, but rather the primary obligor answerable for all promises this title makes to the employee).

Plaintiff alleges that he was injured during the second FCE scheduled by Liberty. Under the Workers' Compensation Act, employers and their insurers are required to furnish vocational rehabilitative services, including "vocational evaluation." Va. Code § 65.2-603. Further, employers and their insurers have the right to have injured employees examined, and insured employees have the right to refuse such examinations. *See* Va. Code § 65.2-607 (medical examination); *R. G. Moore Building Corp. v. Mullins*, 10 Va. App. 211, 213 (1990) (Claimant was justified in refusing to submit to a test because "she was genuinely in fear of the testing" and the potential for injury.). In the present case, Plaintiff alleges that Liberty was "negligent in the case management" of Plaintiff by scheduling the second FCE and that such negligence "was a direct and proximate cause of additional pain and complications" to him. Whether it was part of a vocational evaluation under Va. Code § 65.2-603 or whether it was part of a medical evaluation under Va. Code § 65.2-607, the Workers' Compensation Act provided for the FCE, which was an integral part of Plaintiff's Workers' Compensation Claim.

Moreover, after Plaintiff was injured as a result of the second FCE, Liberty continued to make weekly payments to him based on his incapacity to work and continued to provide him medical treatment, including a subsequent surgery, *as part of his Workers' Compensation claim*. These facts indicate that Plaintiff's "additional pain and complications" fell within the scope of the Act and that the defendants properly addressed the matter as an extension of his original Workers' Compensation Claim.

After the Workers' Compensation Commission found that Plaintiff had "reached maximum medical improvement," the Commission approved a settlement between Plaintiff, Plasser, and Liberty on January 19, 2007. Notably, the Commission ordered that Plasser and Liberty were to be "released and discharged from any and all liability for benefits of any nature . . . as a result of the alleged accident of September 29, 2002, and any injuries resulting therefrom, *including any compensable consequence, change-in-condition, aggravation, or exacerbation*." Order Approving Settlement at 4 (emphasis added). Since the injuries Plaintiff sustained as a result of

undergoing the second FCE were properly treated as an extension of his original Workers' Compensation Claim, the settlement agreement ordered by the Commission effectively bars Plaintiff from bringing a claim of negligence against Defendants.

## C. *Dual Capacity Doctrine*

Virginia has rejected the "dual capacity doctrine," which would hold an employer liable to its employee outside of the Workers' Compensation Act if the employee's alleged injuries were caused by acts or omissions of the employer outside of the employment context. The purpose of the Workers' Compensation Act is to "balance the needs of employers and employees by guaranteeing a certain recovery that may fall short of full tort damages. The text of the Act indicates that the dual capacity doctrine does not apply [in Virginia] and the Supreme Court has not indicated otherwise." *Budd v. Punyanitya*, 69 Va. Cir. 148, 150-51 (Albemarle County 2005), *aff'd*, 273 Va. 583, 643 S.E.2d 180 (2007). Applying this notion to the medical malpractice context, one federal court sitting in Virginia held that the Workers' Compensation Act:

> [E]xpressly provides that the consequences of any malpractice shall be deemed part of the injury resulting from the accident and that the injured shall be compensated for such malpractice as a part and parcel of the original injury. It is also settled that *an employer is liable to pay compensation for any aggravation of the original injury*, even if the aggravation arises by reason of malpractice.

*Evans v. Newport News Shipbuilding & Dry Dock Co.*, 243 F. Supp. 1017, 1019 (E.D. Va. 1965), *aff'd*, 361 F.2d 364 (4th Cir.), *cert. denied*, 385 U.S. 959 (1966) (emphasis added). Therefore, in Virginia, when employers and their employees are covered under the Workers' Compensation Act, employers and their insurers cannot have any liability stemming from the treatment of their employees' original work-related injuries or any aggravation thereof. In this case, Liberty assumed the burdens of Plasser to provide Plaintiff with medical and vocational treatment for his initial injury as well as any injuries he sustained during treatment, which would include those resulting from the second FCE. Therefore, Liberty and its agents are entitled to the same immunity that Plasser enjoys from any "dual capacity" liability.

D. *Summary*

The Court finds that Plaintiff's allegations fall squarely within the province of the Workers' Compensation Act. The Commission approved the settlement release on January 19, 2007, some twenty-one months after Dr. Barr ordered the second FCE. The settlement is clear and unambiguous and resolved all matters concerning the Plaintiff's injury. Additionally, because Virginia does not recognize the "dual capacity doctrine," Liberty and its agents enjoy the same immunity from liability that Plasser does under the Act.

## IV. *Conclusion*

For these reasons, the Court will sustain the Defendants' Plea in Bar and dismiss the Plaintiff's case.